(32 Misc. Rep. 446.)

TABERNACLE BAPTIST CHURCH v. FIFTH AVE. BAPTIST CHURCH
OF NEW YORK CITY.

(Supreme Court, Special Term, New York County.  September, 1900.)

1. GIFTS—GIFT SUBJECT TO TRUST—TITLE OF DONEE.
    By the terms of an agreement certain property was given to a religious corporation, subject to a trust to pay the income to a second religious corporation, for use by it in mission work, for the term of 10 years; then, if such corporation should be designated during such term by certain persons named in the agreement, at the expiration of the first period of 10 years, the income was to be paid to the beneficiary designated for a second period not exceeding a further term of 10 years; and at the expiration of such second term, or in default of designation, the net annual income of such fund was to be used forever by the corporation first named in its mission work.  *Held,* that the obligation to pay the income of the fund to another beneficiary contingently did not prevent the vesting of the legal title to the fund in the first named church as the ultimate beneficiary.

2. SAME—DEEDS—TITLE OF DONEE.
    A donee in a deed of gift may take an absolute title to the property conveyed, though such property is subject to an obligation to pay a beneficiary charge to another for a stated number of years.

3. PERPETUITIES—RELIGIOUS SOCIETIES—RESTRAINT OF ALIENATION.
    A gift to a religious corporation of property which it has no power to alienate, with a limitation that it must use the income for its own religious purposes, is valid, though such a gift to a corporation formed for a different purpose would be void as in conflict with the rule against perpetuities.

4. TRUSTS—FORFEITURE—CONSTRUCTION BY TRUSTEE.
    Where property is bestowed in trust, the income to be used by a beneficiary in mission work, but only at a specified location, and the beneficiary is compelled to abandon its location at the place designated, the trustee was legally entitled to refuse to make further payments of income of the trust to the beneficiary.

Action for an accounting by the Tabernacle Baptist Church against the Fifth Avenue Baptist Church of New York City. Judgment for plaintiff.

Fullerton & Scharps (Benjamin Scharps, of counsel), for plaintiff.

Howland & Murray (George Wellwood Murray and Charles P. Howland, of counsel), for defendant.

RUSSELL, J.  The plaintiff seeks from the defendant an accounting for the income on $50,000 of Northern Pacific Railroad Company 5 per cent. bonds from the 31st day of May, 1893, to the commencement of this action, November 26, 1898.  The interest of the plaintiff to this income is derived solely from the following agreement, which was executed by the parties thereto:

"Agreement made this first day of December, one thousand eight hundred and ninety-one, between John D. Rockefeller, hereinafter called 'Mr. Rockefeller,' party of the first part, and Fifth Avenue Baptist Church of New York City, a corporation organized under the laws of the state of New York, hereinafter called the 'Fifth Avenue Church,' party of the second part.  Mr. Rockefeller hereby gives and transfers to the Fifth Avenue Church fifty consolidated mortgage bonds of the Northern Pacific Railroad Company for one thousand dollars each, bearing interest at the rate of five per centum per annum, payable June and December first, principal and interest payable in gold; principal due 1989; together with interest coupons thereon, carrying interest

from December 1st, 1891; to be held by the Fifth Avenue Church upon the following trusts: (1) During the continuance of its ownership of the said bonds to leave the same on deposit for safe-keeping with the Farmers' Loan and Trust Company of the City of New York. (2) During the term of ten years from December 1, 1891, to pay over the income received from the said bonds, less the charge of the said trust company for safe-keeping, or, in case of a change of investment of the said fund, to pay over the net income of the fund, semiannually, to the Tabernacle Baptist Church of the City of New York, a corporation organized under the laws of the state of New York, and hereinafter called the 'Tabernacle Church,' for use by the Tabernacle Church only for its work at Second avenue, between 10th and 11th streets, in the city of New York. (3) If during the said first term of ten years Mr. Rockefeller's wife, Laura C. Rockefeller, and his son, John D. Rockefeller, Jr., or the survivor of them, shall, during life, by written communication to the Fifth Avenue Church, designate the beneficiary of the income of the fund for a second term of ten years, or, at their election, for any single shorter period of time, then to pay over the net income of the fund, semiannually, to the beneficiary so named; the said income to be used only for Baptist city mission work in the city of New York. If the said beneficiary shall be the Tabernacle Baptist Church, the income shall be used only for its work at Second avenue aforesaid. (4) Upon the expiration of said second term, or in default of a designation as above provided, then forever after to expend in every year the net annual income of the said fund for such Baptist city mission work in the city of New York as may be lawfully carried on by the Fifth Avenue Church. (5) If during the two terms above mentioned the Fifth Avenue Church shall become satisfied that the income paid to the beneficiary thereof for the time being is not used in accordance with the terms of this instrument, or, further, while the Tabernacle Church is the beneficiary, if that church ceases to be a member of the Southern New York Baptist Association, or its successors, in either event the Fifth Avenue Church may, in its discretion, thenceforth discontinue payments of income to the then beneficiary, and such discontinuance shall be taken as ending the term then current. (6) The Fifth Avenue Church shall have power, in its discretion, to change, from time to time, the investment of the said fund, to any kind of personal property, including, in its discretion, mortgages on leasehold or other property, or the purchase of leasehold property itself. The Fifth Avenue Church hereby accepts the said trust, upon the terms hereinbefore set forth, and hereby covenants with Mr. Rockefeller, his executors, administrators, and assigns, to faithfully carry out the same. In witness whereof, the parties hereto have executed this agreement in duplicate the day and year first above written.

"[Signed]　　　　　　　　　　　　John D. Rockefeller. [Seal.]
"Witness as to signature of John D. Rockefeller:
"D. I. Carroll.
"[Signed]　　　　　　　　Trustees Fifth Avenue Baptist Church,
"By J. A. Bostwick, President.
"[Signed]　　　　　　　George H. Hansell, Secretary and Treasurer."

· The income was paid by the defendant to the plaintiff up to May 31, 1893, when default was made by the Northern Pacific Railroad Company in the payment of interest, and nothing has been received by the defendant since that time. A reorganization of the Northern Pacific obligations was effected, by which the defendant received $1\frac{1}{2}$ per cent. in cash on the par value of each of the 50 bonds, amounting to $750, $66\frac{1}{2}$ per cent. of the par value in general lien 3 per cent. bonds, and for the balance $62\frac{1}{2}$ per cent. of such par value in preferred stock trust certificates of the railroad company. Under this substitution of security in place of the defaulting interest, and as an equivalent therefor, the defendant obtained in cash $750, general lien 3 per cent. bonds of the par value of $8,250 and of the present value of $5,527.50, $766.50 inter-

est on the bonds received for defaulted interest, $562.50 interest on the general lien bonds from January 1, 1897, to December 1, 1897, a similar sum for interest from December 1, 1897, to October 11, 1898, and, in dividends on the preferred stock trust certificates, $937.50. During the period from the trust agreement to December, 1896, the plaintiff was located at 162 to 168 Second avenue, between Tenth and Eleventh streets, in a large church edifice with a parish house attached. In December, 1896, the plaintiff was ejected from the church edifice and the main portion of the parish house, so that its mission work on Second avenue necessarily greatly diminished, and its congregation dwindled to a small number of persons. It regained possession in December, 1897, and maintained occupancy of the premises until October, 1899. Between January 1, 1897, and December, 1897, it conducted services in the chapel of St. Mark's Episcopal Church on Avenue A; then in the Welsh Congregational Church in East Eleventh street; then in an edifice at No. 19 East Twenty-First street until December, 1897. It cannot be doubted that, if the agreement between the defendant and Rockefeller was a valid agreement under which the defendant received $50,000 in securities, the plaintiff, as beneficiary, though not a party to the agreement, may appeal to the courts for the performance of the trust duty imposed upon the recipient of this property. The first subject, therefore, to be considered is the validity of the agreement. Does it unlawfully suspend the absolute ownership of personal property for more than two lives in being? 1 Rev. St. p. 773, § 1. It is necessary to determine the ultimate title, in order to ascertain whether any intervening beneficial interest suspends the ownership for a definite period not marked by the duration of life. For, if the donee takes the absolute title, that title may be good, though it be burdened by the obligation to pay for a number of years a beneficiary charge to another, just as the devise in a will may carry an unobjectionable title, though burdened by the obligation to pay an annuity. The power of alienation by the defendant is not hampered by the obligation to pay the plaintiff conditionally for a period of 10 years the income on the bonds, for it has no power, under the terms of the transfer, to alienate thereafter; and thus the period of benefit to the plaintiff in no manner expands the time of the power of disposition beyond that which would have been the case had the plaintiff not been mentioned in the agreement. What, then, is the beneficial interest which the defendant receives under that agreement, with the interest of the plaintiff terminated? If, during the first term of 10 years, Mrs. Rockefeller and the son, John D. Rockefeller, Jr., should designate the beneficiary for the second term of 10 years for Baptist city mission work, then such income for the second term should be so devoted to that beneficial purpose. Upon the expiration of such second term, or in the absence of any such term, the defendant was to forever after expend the net income in the Baptist city mission work of the defendant itself. It is, therefore, plain that the ultimate beneficiary as well as the donee of the property is the defendant, the Fifth Avenue Baptist Church. It receives the property with-

out power to alienate the body, and with a limitation that it must use the income for one of its own religious purposes. Unquestionably such a restriction of the power to alienate any portion of the capital, either by voluntary action or legal proceedings taken to compel the payment of its debts, would, in the case of another corporation, subject the gift to the inhibition of the statute. The property is tied up in perpetuity, leaving only the overflow to be distributed. But the work of a religious or charitable corporation is exceptional. These bodies are formed for lasting purposes, to serve human society, not for acquisition, accumulation, or profit, but for purely altruistic purposes of moral and physical help. It is, therefore evident that power to dissipate the capital fund given them by philanthropic persons is antagonistic to the very purposes of their creation. It is essential, therefore, as they do not earn money or make money for the uses of their formation, that the body of the property given to them, from which flows yearly their power to benefit, should be preserved intact. Hence such corporations may take by will, deed, or assignments a fund which they cannot disturb except to invest or reinvest, but the income of which is free to be used for the objects of their existence. Robert v. Corning, 89 N. Y. 226; Wetmore v. Parker, 52 N. Y. 450. By section 4, c. 60, Laws 1813, which was in force at the time of the agreement, the trustees of a church are authorized to possess all real or personal estate given, granted, or devised to the church, or to any person for their use, and to purchase and hold other real and personal property for such church or other pious uses. It would be a fundamental departure from the very object of the bounty given if the trustees of a church could terminate the yearly benefit to the beneficiaries by dissipation of the principal sum. I hold, therefore, that the defendant, Fifth Avenue Baptist Church, took good title from Rockefeller, and that the requirement to pay conditionally for 10 years the income to the plaintiff, Tabernacle Baptist Church, did not destroy that title. Nor is the objection that one church may not be trustee for another any more forcible. Assuming this to be the general rule, the principal object of the agreement was to vest in the defendant church the title, and the burden of paying for a period of years to the plaintiff church was a mere incident. It would, therefore, follow that the plaintiff must recover the income up to the 11th of October, 1898, at which time it ceased to be a member of the Southern New York Baptist Association, and when, therefore, the defendant could and did discontinue payments of income, were it not for the additional limitation upon the payments of that income that the defendant church might discontinue such payments if it became satisfied that the income paid to the beneficiary was not used in accordance with the terms of the instrument, which required the income to be used by the plaintiff church only for its work at Second avenue, between Tenth and Eleventh streets, in the city of New York. This discretion of the defendant church limits the absolute right of the plaintiff to the income in the manner stated. The discretion to be exercised by the defendant necessarily must rest upon some facts; but, after all,

it is not the discretion of the court as to what the defendant should have done which that defendant is required to rely upon for its justification, but its own judgment given upon some basis of circumstance, incorrect though that judgment may have been. The court cannot say that the beneficiary church should not be deprived of its income because, struggling against untoward circumstances, it could not maintain the splendor and harmony of such religious exercises as would attract a large congregation, or, because deprived of a considerable portion of its income by the default of the railroad company, it could not maintain substantially its mission work on Second avenue, but is compelled to accept the judgment of the trustee to whom was confided the discretion by the creator of the trust, if that trustee had sufficient evidence upon which it became its duty to exercise any judgment at all. The events beginning with the 1st of December, 1896, impairing the efficiency of the church services and mission help, were sufficient to give the trustee the right to a judgment upon the propriety of a further continuance in the payment of the income. That trustee had then become the recipient of the defaulted interest from May, 1893, and declines to pay over any portion. Legally speaking, it was justified in taking such a stand at that period, and with the legal rights of the parties the court alone has to do. It must leave the two or three who are gathered together in His name to the judgment and consideration of those who act from a higher standpoint than that from which the eye of the law views secular affairs. Up to the time when the trustee exercised its discretion as to the further payments of income, the rights of the beneficiary church were absolute to that income which had accrued. The trustee had no right to refuse to pay the income which had accumulated in the past. Its action was prospective purely, and until it acted the plaintiff church had a right to incur obligations upon the faith of an anticipated income wherewith to discharge those burdens. Judgment must, therefore, be given for the plaintiff for the income from May, 1893, to December, 1896, which I will endeavor to ascertain and state in order to avoid the necessity of a reference. I regard all that which was received as the substitute for the defaulted interest as the income of the original bonds. If the parties can agree upon the respective amounts, their computation will be accepted by the court.

Judgment accordingly.